First case on our call this afternoon is Agenda No. 23, Case No. 105-075, People of the State of Illinois v. LeVar Bridgewater. Counsel may proceed. Good afternoon, Your Honors. May it please the Court. Counsel, my name is Fletcher Hamill and I represent the defendant Appelant in this case, LeVar Bridgewater. Your Honors, this case in this current state presents two issues before this Court. First, there is the search and seizure issue on which this Court granted leave to appeal. And now there is also a jurisdictional issue that has been created by the Apollo Court Second District's opinion in People v. Marker that came down this May. I will start with the search and seizure issue on which this Court granted leave to appeal. This issue is resolved by applying two recent United States Supreme Court cases to the Illinois Constitution. And that's Atwater v. Lago Vista and Thornton v. the United States. The facts in this case are straightforward. The defendant was driving... Did Atwater really apply here? I think in Atwater the defendant was arrested for a misdemeanor, not any offense as it is here. I believe... well, I believe Atwater was arrested for a seatbelt violation. If... and I don't believe that was punishable by jail, and that's the distinction which I draw. The Apollo Court said that Atwater applies. Apollo Court is really the party that brought Atwater into this case. My position is that Atwater shouldn't apply to Illinois at all. If in fact that was a jailable offense in Atwater, which my understanding is that it was not, then that would be correct and it wouldn't apply here at all. And this question just moves straight into the Thornton analysis. In case that I'm... well, in case I'm right, the Atwater opinion doesn't apply to... should not apply to Illinois because under the Limited Lockstep Doctrine, and that is because under the Limited Lockstep Doctrine, one of the exceptions that this Court has carved out is the exception for a longstanding Illinois case precedent to the contrary of the United States Supreme Court decision at issue. And in this case... and that standard was created by People v. Kruger, and Kruger... this Court engaged in two-step analysis. First, Your Honors, looked at whether or not there really was a longstanding Illinois precedent to the contrary of the United States Supreme Court decision, and that answered the question of whether or not this Court can depart from the Lockstep Doctrine in the case. And then secondly, this Court evaluated the reasoning of the Supreme Court majority opinion versus the assenting opinion to determine whether or not this Court should depart from the Lockstep Doctrine in that case. And applying that analysis to Atwater, Your Honors should conclude that Atwater should not apply to Illinois under the Limited Lockstep Doctrine. Isn't, Mr. Hamill, isn't this just as simple as applying Thornton to this case? Well, it could be. If you feel that the reason Atwater is relevant to this case, the reason that the appellate court inserted Atwater into this case was to counteract the distinction that I tried to draw between this case and Thornton. In order for my... the distinction I draw between this case and Thornton is that my client was not ever subject to arrest while he was inside of his car, and my argument is that that means that he's not a recent occupant of the car like the defendant was in Thornton. Now, the reason Atwater comes into play and the appellate court brought it into play is that if Atwater applies to Illinois, then my client was in fact subject to arrest while he was still driving the car because he was committing the offense of speeding. So, I guess the short answer to your question is in order for my client to succeed, Atwater has to be relevant to this case because Atwater is the case that create... or Atwater would be... would erase the distinction, factual distinction I'm trying to draw here. So, the long... under the long-standing state... state contrary... long-standing state precedent to the contrary standard, first you look at whether or not there is in fact long-standing state precedent to the contrary, and here there clearly there is. The... this court in 1960 in People v. Watkins established a rule that a mere traffic offense is not an arrestable offense, and that a police officer cannot arrest and search the person based on the mere fact that they committed a traffic offense. Prior to Watkins, the law was the opposite. In fact, the law prior to Watkins was what it would be if Atwater applied to this case, and that would... that was a traffic offense is an offense, a police officer can arrest for an offense, a police officer can search a person and his car incident to be arrest, therefore anything a police officer does that is short of a full-blown arrest and search is constitutional because it's less intrusive than the constitutional arrest and search. That was the law prior to Watkins. This court changed the law in Watkins, and every single circumcisor case that has arisen from a traffic stop that has come down... There is a... there is a suggestion here that there's a... that this all flows from the obstruction of justice charge that was brought rather than the traffic stop. Yeah, that's correct, and that's actually... that's my position, actually, that this comes out of the obstruction of justice arrest, not from the traffic stop, and again, it's the appellate court that brought Atwater into this because they feel that it doesn't matter whether or not the obstruction of justice arrest justified the search because there could have been a speeding arrest, and that would have justified the search anyway. So that's why Atwater is relevant. But I'll move on to Thornton. Essentially, my point on Atwater is that it shouldn't apply, and this defendant could not have been arrested for speeding, therefore his arrest for obstruction of justice was the first time during this encounter that the defendant was in fact subject to arrest, and that's what distinguishes this case from Thornton. In Thornton, the defendant was... the officer saw the defendant driving a car with license plate tags from a different car. He had probable cause to believe that this was a stolen car. He had probable cause to arrest the defendant at that point, and when you... and when you look at the history of Thornton, which I... in the history leading up to Thornton, which I... Did you cite any authority? I didn't take a look at that. Whether the possession of a stolen motor vehicle based on the mere fact of the license plate not matching, you're saying that is subject to arrest for possession of a stolen motor vehicle? It's not... well, it would be arguable. I think that the point in Thornton was that the officer could initiate the stop under that... for that reason. So you don't have any authority for the premise that non-matching license plate equals probable cause for stolen motor vehicle arrest? Well, no. I mean, the defendant in Thornton didn't argue that, apparently, and so... and plus, he wasn't ended up being arrested for another offense. And what would... assuming that you're correct, what would be the relevance of that position? The relevance is that when you look at Thornton, you look at the two justifications for the Thornton holding. In order to satisfy both of those just... or in order to further those justifications, there needs to be a bright line rule drawn in between people who are... Well, there needs to be a bright line definition of recent occupants of a car. And in order to get that bright line definition, what I'm asking this court to do is find a recent occupant of a car as a person who was subject to arrest while he was in the car and then later exited the car prior to the police officer reaching that defendant. And now, Thornton was a case where... my position is that the defendant was, in fact, subject to arrest when the officer first saw him. The officer took his time, basically played it safe, in order to make sure that he could arrest the defendant safely. And what the rule of Thornton is, what I'm saying, the true purpose of the rule in Thornton is to allow officers to do that without sacrificing their ability to search cars. Because the moment he sees the defendant, he sees him in the car, he's subject to arrest. If he catches him when he's still in the car, underbellum, he gets to search the car. If Thornton had gone the other way, the officer would lose his ability to search the car because he took his time to get to the defendant because he wanted to be safe and would not have lost his ability if he had simply rushed to the car. And so that's the justification for Thornton, is he don't want to create a rule that would essentially encourage police officers to act unsafely in order to preserve their ability to search cars. That purpose is not furthered in this case because the officer in this case never had the ability to search the defendant's car because the defendant was merely speeding and was not subject to arrest. So there was no, he could conduct his traffic stop in any way he wanted without having to worry that he was going to lose his ability to search the car. Mr. Hamill, your main attack, I thought, on Thornton or the application of Thornton is that Thornton is based on Belton and you feel that Belton's come under sufficient criticism by members of the Supreme Court now that it's no longer viable even though it's never been overruled. Isn't that one of your main arguments? My argument, well, it's not as strong as that. I'm not saying that Belton's no longer viable. In fact, I think Belton is viable and I think Thornton is viable. But I think the line needs to be drawn there because when you look at the history leading up to Thornton, Belton and Thornton, you start with Chimmel where you have the twin concerns of officer safety and evidence preservation. But when you move this into cars under Belton and Thornton, what happens is you lose that original rationale because the fact of the matter is that when cars are searched and sent into arrest, the defendants are secure. But Belton didn't use really the Chimmel rationale, did it? Exactly. Is that the rationale you think should be properly applied? Yeah, exactly. Instead, they drew this bright line rule and the bright line rule is based on controlling, not controlling, but basically allowing police officers to conduct themselves without having to worry about what that does to their ability to search cars. Because I think if you look at Belton, if the officer, if you look at the dissents in Belton and the criticism of Belton, every one of them would agree that had the officer just left the defendants in the car while he searched it, that he was properly searching under Chimmel. The reason you needed the Belton rule was to create this bright line rule that says you don't have to do that in order to preserve your right to search. Do we have the authority to move differently than the Supreme Court, even if the Supreme Court has voiced some concern about their own opinion? No, you don't. And that's why I do think Thornton is the law here at Illinois, and I do think Thornton overruled this Court's decision statement the year before. But you don't have to apply Thornton to cases that are beyond its scope. And my point is that Thornton was a limited extension of the bright line rule from Belton to allow officers in situations where the arrest does not immediately follow the formation of probable cause to the arrest, to allow them the leeway to conduct a stop in an arrest in a safe manner without having to worry that the defendant would get out of the car and have them lose their right to search a car pursuant to arrest, which they would have if they stopped them under Belton. My position is that that's the whole meaning of Thornton. And Thornton shouldn't go beyond that into a situation like this, where the officer really didn't have to worry about whether or not he could lose his ability to search a car because he never gained that ability until he arrested the defendant for obstruction of justice after the defendant had vacated the car. Doesn't the rule you espoused encourage people to get out of the car as quickly as they can and get away from the officer? Well, only if they plan on committing a crime after they've been stopped. Because remember that under my rule, if the defendant is already subject to arrest in the car, then under Thornton, nothing he does is going to reduce the officer's ability to search. That's Thornton. What I'm saying is that if the defendant's not subject to arrest when he's in the car already, then he really has no incentive to get out of the car because the officer still doesn't have the opportunity to search. It's only if he plans on going out and committing obstruction of justice after he's been stopped or some other crime that he would want to be out of the car. But I would submit that most people aren't going to think like that when they're being stopped for a traffic offense. Couldn't you say in this instance that the crime of the obstruction of justice began when he got out of the car and wouldn't heed the officer's direction to stop or to answer his question to reduce his driver's license? Well, he was already out of the car only a few moments when he first failed to heed the officer's request. As I understood it, they pulled into this lot. The officer put the lights on and was trying to stop him. He pulled into the lot, got out of the car, went inside when the officers told him to stop. He didn't. Went out and went into the store and told him to come out. He wouldn't come out. Yeah. I'm measuring this from the point where the officer decides he has probable cause to arrest him for obstruction of justice. I don't know that the officer could have arrested the defendant for obstruction of justice the moment he failed to comply with that single command. He obviously, by the time he actually did, a lot of other things had happened in between the store and back in the parking lot. But the point is that at the time that the defendant was arrested for obstruction of justice, at the time when the officer decided he had probable cause to do so, the defendant is standing in the parking lot. And he's like anybody else standing in the parking lot, and his arrest should be governed by the original rule in Chimel, which would not allow the officer to get into the interior of the car. Mr. Hamill, I think at one point in the brief, in the state's brief, they argue that if after the arrest for the obstruction there would have been an inventory search of cars, that there was inevitable discovery, any part of our, or should it be any part of our analysis of this case? I don't believe that they actually argued inevitable discovery. They argued that in this trial court. They abandoned it in the appellate court. I don't recall them bringing it up. Had they, I would have certainly objected. Do you think that we can consider that, or should it be part of our analysis? I don't think it should be because the record really doesn't develop the facts that would be necessary to determine that this was an inventory search. The car was parked on private property. It was a store parking lot. There was no testimony from the officers that anyone from the store told them that the car couldn't stay there. I don't believe there was really any testimony from the officers that they had any kind of policy about impounding cars that are parked on private property. So I think that's the reason the state abandoned the argument on appeal, is it just isn't supported by the record that there was in fact an inventory search, and why they chose to justify it unlawfully instead. Mr. Hamill, can we go back to Justice Thomas' earlier question about isn't this just an application of Thornton, and the main threshold is whether or not it's a recent occupant of the car, and he was a recent occupant of the vehicle. Well, not as I define it. And the way I define recent occupant of the car is I look at a period of time in between when the officer obtains probable cause to arrest, and starting from there to the point where the officer actually arrests the defendant, anybody who would be inside a car during that period is a recent occupant of the car. I say under Thornton. The defendant in Thornton is one of those people. Thornton's a case where somebody was in the car at this point, so he is a recent occupant. What I'm saying is somebody who was in the car at this point, before the probable cause existed, is not a recent occupant of the car, not so much because the United States Supreme Court says so because it wasn't before that, but because this Court should limit the scope of Thornton to instances that actually support the right, further the bright-line rule, and putting these people in the definition of recent occupant of the car doesn't do that. Was the appellate court in error when they said the, in fact, defendant in Thornton was arrested as a result of a pat-down search that was unrelated to the traffic offense? No, that's true. That's what ultimately was the reason the defendant was arrested in Thornton. However, under Rent v. United States, the inquiry is not into when the officer subjectively decided to arrest, but when he could have. And my position is he could have arrested him prior to him getting out of the car. Therefore, his arrest after the fact is less relevant than the fact that he just could have. That's what we really look at, not what he wanted to do. So the appellate court was correct. Your argument, then, is that Thornton doesn't apply to this factual situation. Correct. That's where the driver's left the car. The event that causes probable cause occurs after that point before he gets back. That's correct. In some way, that is not a recently being in the car. Right. That's right. But there's no finite time we can point to or anything of that nature. It's just when probable cause occurs after the person has left the car. Actually, I think the finite point in time is where is the defendant at the moment the probable cause is formed. And I think this is actually a brighter line and a more easy appellate rule for officers in the field than, say, in five minutes or some actual time frame. Because all you do is you take that time. Isn't the bright line an arrested recent occupant of a car that the passenger department can be searching? I'm sorry? Isn't that the bright line? Well, yeah, but then the recent occupant has to be defined. That's what this case is about, then, is whether this man was a recent occupant. Correct. Are you then saying that if that test doesn't work, the only other way to look at the ability to search is under the Connell standard, what they call the lunge area where someone could lunge to get a weapon in terms of officer safety, that criteria? That's correct, because anything that happens that's not inside the passenger department of a car is governed by a SHML. And in this case, the defendant's lunge area would not have included the interior of the car. Unless this Court has any questions, I can briefly. You haven't spent much time on the jurisdictional question, but it appears that Rule 606B, both sides seem to have relied upon a well-settled interpretation of that rule by the appellate court. And so you only raised this issue later in the supplemental brief. Do you think it would be better for this Court to remand the cause to the appellate court so that we can review the appellate court's version of jurisdiction in the first instance, as how this rule would affect it? I'm not sure. I think that is what this Court did in Peeble v. Smith, which is a case I discussed in my brief. I don't think that's necessary in this case because the underlying facts, that either granting the appellate court jurisdiction or not, are undisputed. And there's no question now as to whether or not the State attempted to file a late notice of appeal or anything like that, because we know that they didn't. You agree with the Marker case? Yes. Do you think that that's a better case for deciding this issue? Well, I think both of these cases are equal. I mean, the underlying facts are the same, essentially. The fact that the appellate court in Marker is the one who originated this interpretation of 606B, I don't think that necessarily makes that a better case to decide the issue, although you certainly can decide the issue in Marker. I would obviously ask that if there's a certificate of importance that has been issued in that case. That's correct. And finally, maybe not finally, if we should agree with your interpretation of 606B, would it be proper for the court to then retroactively apply it to this case? You know, I didn't take a position on that in my briefs. I'm willing to admit when the State has a good argument, and I think the State has a pretty good argument for prospective application in this particular case, particularly because this would be creating an awful lot of void orders out there. I would ask that the rule be applied to this case, because the defendant in this case, at least belatedly, would bring it up. And I cited in my reply brief, I believe it was to Elg, where it was practically the same situation, and they did apply the rule prospectively in Elg, but did apply it to the parties in that case. There's only been one time when that didn't happen, and that's the Bogstaff case, and that case, I think, involves equities that really aren't here. Now, to really put you on the spot, I think you've characterized Thornton as being intellectually dishonest. Some may agree with you on that, but is that an argument that we should accept as a legitimate one in not following the case? I think that, well, I think that the intellectual honesty of the opinion is relevant to whether you want to expand it beyond the basics of its holding and where you want to apply it to situations that it doesn't necessarily apply to. And my point in bringing that up is that it should be construed narrowly, and since this case falls outside of a narrow construction of the case, it shouldn't apply. This court obviously has no choice but to follow Thornton. I would love to be able to bring up a lockstep document. I'll see what time it is. Oh, I'm sorry. I didn't see you either, so we're done. Thank you. Thank you, Your Honor. Thank you. Good afternoon, and may it please the Court. Michael Scodro, Court and Counsel. Michael Scodro from the Illinois Attorney General's Office here on behalf of the people. If I could begin by answering a question that was asked by Justice Freeman regarding the Atwater offense. As the U.S. Supreme Court characterizes the jailability of that offense, Your Honor, they characterize it as a violation, misdemeanor, punishable by a fine of not less than $25 or more than $50. So apparently in Atwater as well, an offense that was not jailable. I'd like to begin as well. I know there are two issues before the Court. I would like to begin also with the Fourth Amendment issue. And in response to the question that was asked from the bench, whether Thornton, this is merely an application of the Thornton decision, it is. There is no dispute here that Thornton, that this State follows Thornton in lockstep. There is no dispute here that by virtue of Thornton, the fact that the defendant in this case had left the vehicle prior to the first encounter with the police officer is immaterial as a legal matter. Nor, of course, in light of this Court's decision in Bailey and other decisions and indeed Thornton itself, implicitly, is there any contention here that there's any relevance to the fact that the defendant in this case was in the police officer's vehicle at the time of the search. So the question that stands before the Court today then is, as counsel has articulated it, the isolated question is, does it matter here that the individual was speeding and had tinted windows to traffic violation misdemeanors, which are, everyone, I believe can see, are arrestable under Illinois law, 735 ILCS 51-10721C, provides that all such offenses are arrestable. The question is, is that somehow not arrestable as a matter of Illinois constitutional law, that is at water, not good law in the State of Illinois? And more importantly, I think the question, and really the threshold question here, is does that matter for purposes of interpreting Thornton? And the unequivocal answer to the latter question is no, it doesn't matter for purposes of Thornton. The Court in that case simply did not consider, much less discuss, whether or not the absence of the plates on the vehicle at issue in that case, the reason why the vehicle was initially pulled over, would have been an arrestable offense, where there was probable cause for any arrestable offense under State law. And an answer to, I believe, Justice Thomas's question, whether there's authority for the proposition that it would have been arrested, certainly none in the Court's opinion, because the Court in Thornton, the majority in Thornton, simply doesn't discuss the arrestability of this issue. And much as the Court in Thornton spoke about Belton, saying, we didn't in Belton talk about the importance of whether or not the individual had exited the car voluntarily, the same holds true now in Thornton to this case. There's no discussion in Thornton, nor should there be, as to whether or not it matters that the individual would have been arrestable or not for the offense at which he was pulled over. Indeed, Thornton itself, in the majority opinion, makes this clear. DeFette was talking about Thornton being justified solely as a way of not penalizing an officer who would otherwise be in a position to search the interior of a vehicle. Not penalizing, I'm sorry. With Arizona v. Gett, you understand that the Supreme Court has granted cert in that case, and it seems to me for the reason to clarify whether the Fourth Amendment requires a police showing a threat to their safety or a need to preserve evidence in order to justify a warrantless search of a car incident to arrest conducted after the recent occupants have been arrested and secured. Does the fact that that is now, does it now question the continued viability of the decision in Thornton? Your Honor, the mere fact that they have taken the case does not in any way undermine the authority of Thornton. The Arizona Supreme Court in that case departed from longstanding precedent in other parts of the country, state courts of last resort. And so it is just as easily viewed as a decision by the U.S. Supreme Court to reaffirm Thornton, to overturn the Arizona court's decision. Do you happen to know where that case stands now in a time frame? Your Honor, I don't know what date argument has been set in the Gantt decision. I'm more than happy to submit a supplemental letter to the court with a time frame, and I would be more than happy also to note, I mean, if the court were inclined to hold a resolution of the merits of this case pending the Supreme Court's decision in Gantt, that's certainly a possibility, and obviously well within the court's authority to do so. We would urge the courts to reach a resolution in any event. Gantt, while it does pose indeed a similar fact scenario, I wouldn't simply note that in the Gantt case the issue that seems to, that's emphasized in the petition, in Arizona's petition for certiorari in that case, was whether or not it was important or indeed dispositive that the defendant in that case was in handcuffs in the police cruiser at the time of the search. Whereas, and of course that's a fact in this case, but the issue that's been raised throughout the proceedings and before this court, is the separate question of whether Thornton is distinguishable because of the fact that there would not have been an arrestable offense prior to the car being pulled over. That being said, they're undoubtedly in the very same universe of cases, and if the court were to, in Gantt, for example, overturn its decision in Thornton, obviously that would bear on this case. I would emphasize, the defendant at one point said that Thornton is justified as a basis to, sort of the theory behind Thornton, the theoretical underpinning, is that we don't want to penalize officers who would otherwise have the authority to complete a full search incident to arrest in the Belton sense, just because the individual has fled the vehicle or has voluntarily exited the vehicle. But indeed, in the opinion itself at page 621, the court makes clear that the rationale for Thornton is far deeper than this. As the majority writes, in all relevant respects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. And then proceeds, the stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of but still in control of, in this case here, the vehicle. In other words, the court there was articulating the bright line rule from Belton and extending it to the facts of those case, not relying solely on some view that they don't want to penalize police officers who otherwise might have an effort, might have an ability to conduct a full search of the vehicle. Then moving on to the Atwater question, it certainly isn't before, it need not be before this court. Atwater, of course, is only reached here on the Fourth Amendment issue if the court refers to conclude that Thornton does not apply to circumstances. This is a distinction that would be relevant to the Thornton majority. It does not apply to circumstances in which the vehicle was pulled over for a traffic offense. As we've argued, that certainly is not the case under Thornton and there's nothing in the opinion to suggest that. If the court were to reach Atwater, as we point out in our briefs, and I won't spend much time on this unless the court has questions, there is certainly not a preexisting history adverse to the Thornton rule in this case that we saw in the Kruger case where this court, in 1997, declined to file the U.S. Supreme Court's decision in Krull. The defendant would analogize this case to Kruger, but that simply is not the case. The Watkins decision has been interpreted and cited, and both parties cite a number of cases that rely upon Watkins or that cite it. But if we consider some of the more recent cases cited, this Court's decision in Jones in 2005 is cited in the defendant's brief as a case in which the Watkins principle is articulated. But a careful reading of Jones shows that they're actually citing the U.S. Supreme Court's decision in Knowles v. Iowa, and that's a very different principle. Knowles v. Iowa simply doesn't hold that you can't arrest someone for a traffic misdemeanor. Indeed, if it did, it would have been overruled or it would have been overruling Atwater. What Knowles v. Iowa holds instead is that if the officer chooses merely to issue a traffic citation, you cannot conduct a full search of the vehicle incident to the mere citation. And it follows naturally from the rationale under Gerding-Belton that the Court would reach that conclusion because there isn't the same concern about an individual reacting negatively and perhaps violently to a would-be arrest when you're simply issuing a traffic ticket. That's the rationale of Knowles v. Iowa. In other cases cited in the briefs, Moorman, for example, merely cites Jones, which in turn cites Knowles. So the idea that there is a well-entrenched principle that Atwater would contravene in Illinois is not borne out by the case law and does not satisfy the standards of Kruger or, more recently, this Court's 2006 decision in Cabalas. Finally, I'll turn briefly to the question of this Court's jurisdiction. It was touched upon briefly at the end of the defendant's argument here. As we point out in our brief, there are numerous reasons why this Court has jurisdiction to answer the important Fourth Amendment question the Court agreed to hear in granting the petition for leave to appeal. As the defendant concedes in his reply brief at pages 3 and 5, this Court has plenary supervisory power. And, indeed, in cases like Lyle, Wakanda Fire Department, and the Moore case that are cited in our brief, this Court has exercised that authority to correct what otherwise would be fatal jurisdictional deficiencies. So at the outset, before even reaching the merits, and of course we believe strongly that Rule 606 was complied with here by the Willett County State's attorney, but putting that to one side, the Court needn't reach the issue in this case. And in answer to the question raised by the bench earlier as to whether Marker better settles this, is the better vehicle for answering the question, absolutely it is. In Marker, there is no underlying issue that the Court has decided to take up. There is no underlying constitutional or other question before the Court. And perhaps more importantly, all of the briefing and all of the argument in that case is and will be devoted to the substance of this particular question, as opposed to sharing time, and, again, has the benefit of, although we all have the opinion in Marker, it is obviously the appeal from the case in which that was actually aired in the appellate court. So you're suggesting we hold this for Marker? Your Honor, holding is one option. Alternatively, I would suggest the Court exercise its supervisory authority in this case to reach the important underlying Fourth Amendment question. Given that it's a car search case, frequently to recur, the State would urge the Court to reach the issue and rely on Marker, using its supervisory authority and rely on Marker to answer the question. We do believe that the question is easily answered and is answered in favor of the decades-long tradition of the way in which parties on both sides have interpreted Rule 606B, and I'm happy to speak briefly to that issue as well. As we point out in our supplemental briefing, Rule 606B, as even the majority in Marker was quick to concede, has some ambiguity inherent in it. I think that one reading of that rule, which eliminates all of that ambiguity, frankly, is to understand the rule to permit, to provide an express grant of authority to appeal from, to toll the appeal period during the pendency of a motion to reconsider following judgment or sentencing, but as the penultimate sentence of the paragraph provides, any other order or judgment can be appealed within 30 days, and order or judgment being used there incorporates, as I believe the dissent in Marker understood, incorporates the idea that one can appeal from the denial of a rehearing petition off of an adverse suppression order. Indeed, in a number of the cases that are cited here to establish, as the Marker majority cites, that establish this longstanding traditional reading of Rule 606, on which the parties relied in this and other cases, a number of those cases, Rimmer, Stokes, Robbins, Van Matra, all of those cases speak in part, at least, to the idea that the appeal is from the denial of the reconsideration of the suppression motion. In fact, Stokes, the 1977 First District case, actually uses the language of Rule 604A, which speaks about the substantive effect of suppressing evidence, and that is indeed what the denial of a motion to reconsider does, in the context of a suppression order. And I would just note that while both the majority in Marker and the defendants in their briefs rely on the Second District's 2005 decision in Crane, this is a civil case interpreting Rule 307, they rely on the proposition that under Rule 307 the- Was there a recent amendment, not recent, but a 1977 amendment to 307, or was that to 606? The 1977 amendment that's discussed in the briefs is the amendment to Rule 606. Well, when final judgment language was added, doesn't it kind of support the defendant's argument that this clarified that the appellate court's decisions were incorrectly treating final and interlocutory judgments equally? I'm sorry, Your Honor. Can you repeat the question? By adding that language, final judgment, does it not clarify that the appellate court's decisions were incorrect in treating final and interlocutory judgments equally? No, Your Honor, it did not. The language to which Your Honor refers in the first sentence, the reference to final judgment, as I was understanding that the second- I'm sorry, I'm not sure the second sentence should be the second. The third sentence is the third sentence of this paragraph, which refers to no appeal being taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment, which incorporates both the denial, an order denying reconsideration of a suppression order, and a final judgment. With that in mind, going back up, with final judgment, the work that final judgment would be doing there is simply to make clear, in that sentence, that motions to reconsider filed after final judgments are equally susceptible to this, have this tolling rule advantage. The problem here is that with interlocutory appeals, under Rule 604A, and this Court has said, others have said that 604A needs to be construed broadly, understanding it's the only opportunity, unlike 307 in the civil context, the only opportunity for the state to appeal. Under 604A, what becomes an appealable order is one that has the substantive effect of which results in suppression. And recognizing that a motion to reconsider, particularly this case illustrates the point beautifully, because I'm happy to walk through the procedural history, but the motion to reconsider in this case was rebriefed, re-argued, a new decision with more detailed articulation of the Court's decision set out on the record. So clearly it was taken quite seriously. A situation like that, duh, is an order that has the effect of suppressing evidence. Now, there isn't an analog to that language when it comes to final judgments. And so it would come as no surprise that Rule 606B would specifically articulate that as to final judgments, the dependency of the motion to reconsider tolls the period for filing a notice of appeal, because the final judgment doesn't have the benefit of the broad 604A language that encompasses motions to reconsider orders suppressing evidence. I would add that there is an alternative reading here that is equally plausible to the one adopted. Not only that one, but there's also one equally plausible to the one adopted by the appellate majority in marker. And that's the notion that the word, duh, in the opening sentence of 606B simply does not carry the weight that the defendant has insisted it ought to carry. And there is no, again, even the appellate majority in marker can see that there is some ambiguity. Even under the appellate majority's decision in marker, they can see that their reading runs headlong into the second to last sentence of 606B. Because if they're correct that the first sentence of 606B encompasses, that says that all final judgments, that a motion to reconsider filed in the wake of any final judgment tolls the 30-day period for appealing, that's incompatible with the penultimate sentence of the same paragraph that says no appeal shall be taken from a trial court to review after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken. And they, they then resorted to other means of construction to say that may be a reference to the penultimate sentence, unlike the first sentence is really all about interlocutory orders. But if that were the case, then why not refer to interlocutory order here as opposed to order and judgment in the way that 307A refers expressly to interlocutory order. So at the end of the day, there are at least two plausible readings of 307 that are as, as plausible certainly, and run into as many or fewer problems than the marker court majority identified in its reading here. And I would just add that as the Fourth District said in the People v. Thady case in 1971, another case involving the scope of 604, I would note, long continued practical application of the Supreme Court rule is plain evidence of its meaning. And here, since the amendments in 1977, we've had uninterrupted period of both parties understanding the proper meaning of this provision. Certainly, that longstanding meaning, while not dispositive, suggests that even if there's, that at the very least, there's ambiguity and that the reading on which parties have relied for 30 years is at least as plausible. For otherwise, one would expect this would have arisen long before this. Finally, I would simply note that if the court were inclined to use this case to resolve the question presented in the marker decision, that the court give it solely prospective effect. As I believe now, I believe both parties agree that this case satisfies the Bogset v. Emanuel criteria, or the criteria reiterated in that case in 1995, for giving prospective effect to a decision. The dispute would seem to be over whether this case would be governed by the decision. And I would simply reiterate that in Bogset in 95, for reasons similar to the ones presented here, there's no unfair surprise to the defendant and so forth, and the balance of the equities. The court in that case concluded that its decision would not apply to the case before it, even at that point, but would apply only prospectively. And the state would urge the court to adopt that here if the court were to reach the merits of the jurisdictional question. If the court has no further questions, I would ask the courts to affirm the judgment of the appellate court. Mr. Skidrow, thank you very much. Give the final word. I have a few points to make. First of all, I should have thought of this when you asked me the question, Justice Thomas, but if one, one authority for why Mr. Thornton was, was subject to arrest, but is at water. This, that case wasn't an Illinois case at water applied, applied in that case. So, so even if the license plate tags was not a jailable offense, the defendant Thornton would have been subject to arrest while he's still in the car. As to Arizona versus versus Gant, that's, I think that's a pretty important case to this case. In essence, in essence, the, the court is being asked to overrule Thornton in that case. There's no, really no other way to look at it. If in Thornton, the court specifically did not go, it did not delve into a factual determination of whether or not the defendant actually presented a risk to the officers held that you would assume that he did. If they, if they agree with the Arizona Supreme court in Gant, that will, that will erase that presumption. And applying that, if that, if that holding were to come down, applying that holding to this case is real simple. This defendant obviously did not pose any kind of threat to the officers. He was not only secured in the car, but he was actually being driven away from the scene. The search actually increased his opportunity to, to obtain a weapon from his car because had the search not occurred, he would have been driven away. So it now, if Gant goes the other way, the United States Supreme court disagrees with the Arizona Supreme court, then the law stays the same as it applies to this case. Gilbride who tracks these things tells me that October 7th is, is a date. Is the argument. Yes. Yeah. That, I believe that makes sense from what I know. The, I do know that the briefs have been filed in that case. I did, I didn't know the actual schedule of the argument as to, to, to the underpinning, the underlying rationale for Thornton, this, the state read a passage from page six 21 of Thornton. And I think if you continue reading on that very same page, the court goes on to articulate the second reason for it's, it's holding. And that second reason is it doesn't want to punish police officers for acting safely. That, that passage is on, it's on six 21 and six 22 is actually quoted in full in my brief. So there are two, there really are two rationales or 200 justifications for the Thornton holding. My position here is that this court should only extend the Thornton holding in situations where it would further both rationales. The, the threat to officer safety may be, may have been the same important as it was in Belton, but that threat was nil. And that's, that's what Scalia's concurrence was, at least concurrence establishes. There was no threat to, to officer safety in Thornton because the defendant was security was, it was in the, it was in the car 13 years of data. That the, that the United States government presented in that case showed zero instances in which, in which people who were arrested got back into their cars and, and obtained weapons. So the, when you, when you apply the, the shimmel rule into, into cars, you lose that, that racial rationale and you replace it with the, with the bright line rule. And the bright line rules not further by applying, but moving it beyond Thornton. So into this case, and that's why Thornton shouldn't apply here. As to, as to people at Atwater state disputes, the idea that, that there's a longstanding Illinois precedent to the contrary of Atwater. I would point out people versus Cox, which is cited in, in, in my briefs. The defendant is, is arrested for, for, or he's pulled over for a license plate registration or I'm not, I'm sorry, a broken registration white. The, this court called hold held that the, that the officer could not belong to stop constitutionally belongs to stop for 15 minutes to get a dog search head. If Atwater were the, were the law in Illinois, this court's reasoning would have been license plate, license plate light being broken is an offense. The officer could have arrested the defendant for that offense. The officer could have searched the entire interior of the car. Soon to that arrest. And then, and therefore, since the 15 minute per line of the stop was less intrusive than that. And the dog Smith doesn't even, isn't even a search, then that would be constitutional. That would be, that would have been the whole union Cox at that order was a law in the state Cox along with all the other, basically every single case that, that this board or the only public where is the site of involving a minor traffic stop. It doesn't follow that reasoning is evidence of the longstanding tradition in Illinois, contrary to Atwater. So that's definitely there. And finally, just on the jurisdictional question, I do agree that this court has basically a supervisory authority to do anything it wants. It is the, is the gist of the holdings. I would point out also power, the principle of the story to ceases and whether or not this court should exercise a supervisory authority to ignore the jurisdictional issue. I, and I would point out people versus Smith, which is, which I, I just, I talked about in my reply brief where the defendant, the defendant was appealing, uh, appealed that from the judge's order, a judge's order dismissing this post-conviction petition, or I'm sorry, recharacterizing a filing of the post-conviction petition and finding it frivolous. And so that the department correction would revoke his good time. How the court heard the case on its merits, disagreed with the defense. This court granted the defense need to appeal on the substantive issue. And, but instead when it discovered the jurisdictional defect in the original appeal, sent the remand the case to the appellate court to, to determine the jurisdictional question, which essentially came down to, if he didn't file a late notice of appeal or didn't file an amended notice appeal, the appellate court would have to dismiss the case. Uh, this, this case is the similar case. And if the court didn't exercise the supervisory authority and Smith, and it shouldn't in this case either, just just under the principle of story to ceases and trying and keeping consistent, consistent precedent. The, and, and probably just, just as to the, well, the one thing, the one point I do want to make about jurisdictional issue on the, on the actual substance of the issue is, is whatever this court does, probably the last thing that this court should do is hold that the denial of a motion to reconsider is itself a new order suppressing evidence that would, that would obviate the, the, the very tolling provision that, that the state's trying to protect here. If, if a motion to reconsider is itself a new judgment or a new order, then why have, why need, why need a tolling provision? Why, why not just have everybody appeal from, from motions reconsider? It doesn't make sense. It also is problematic because, because as this court has, has repeatedly held trial judges can reconsider suppression orders at any time up until the final judgment. So if, if that becomes the case, then you essentially create, give the state license to appeal. Anytime the judge reconsiders his, his, his, his order suppressing evidence, you know, and it's particularly in a case where, where the, you know, the granting of the motions suppresses that and, and the trial. So, you know, of all the possible holdings, that's probably the last one this court should, should reach. And just finally, the 30 years of public court case law, none of it is based on language with rule 606 P. All of it is based on a vague notion of public policy that, that the appellate court invented in Robbins and has, and has just followed since. And I, and I traced it in my brief that every court is just simply citing to the last court and none of them, none of them actually consider the, the slang language of the rule. So to say, to say that those, those cases stand, stand for the idea that, that the state's interpretation of the rule is reasonable. I don't think that's really true. I mean, they just didn't look at the rule and unless this court has any further questions, I would ask that you, that you reverse the appellate court and reinstate the trial judge's orders. Thank you. Mr. Skidrow, Mr. Hamill, thank you for your participation in today's argument. The court appreciates it. Agenda number 23, case number 105-075 will be.